IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GERBER V. P & L FINANCE CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ELISA GERBER, APPELLANT,

V.

P & L FINANCE CO., INC., A NEBRASKA CORPORATION, DOING BUSINESS AS ELISA ILANA,
LAURIE LANGDON-GERBER, AND PAUL GERBER, APPELLEES.

Filed April 24, 2018.    No. A-17-710.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge.
Affirmed.

Brian E. Jorde and Christian T. Williams, of Domina Law Group, P.C., L.L.O., for
appellant.

Edward D. Hotz, of Pansing, Hogan, Ernst & Bachman, L.L.P, for appellees P & L Finance
Co. and Laurie Langdon-Gerber.

James Polack, P.C., L.L.O., for appellee Paul Gerber.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Elisa Gerber brought this action in the district court for Douglas County against P & L
Finance Company, Inc. (P & L Finance), doing business as Elisa Ilana, Laurie Langdon-Gerber,
and Paul Gerber (collectively appellees) seeking issuance of a stock certificate, as well as nine
other causes of action. Elisa appeals from an order of the district court granting summary judgment
to appellees on the ground that Elisa's claim seeking issuance of stock certificates is barred by the
statute of limitations and that because the claim for issuance of stock certificate is barred, Elisa

- 1 -

cannot maintain her remaining claims. Based on the reasons that follow, we affirm the district court's summary judgment.

BACKGROUND

Elisa instituted this action on June 9, 2014. On July 8, 2015, she filed a second amended complaint alleging ten causes of action: action to compel the issuance of a stock certificate, conversion, equitable estoppel, fraudulent misrepresentation, aiding and abetting, civil conspiracy, unjust enrichment, constructive trust, director breach of fiduciary duties, and officer breach of fiduciary duties. In her second amended complaint, Elisa alleges that she owns one-third of the outstanding common stock of P & L Finance and that the corporation wrongfully refuses to record her ownership on its records and refuses to issue a stock certificate to her for one-third ownership interest. She alleges that in August 2000, Laurie, the president of P & L Finance, induced her to invest $25,000 in P & L Finance in exchange for a one-third stock ownership interest in the corporation, and that in October 2013, she learned that appellees were denying that Elisa was an owner.

Appellees filed motions for summary judgment alleging that Elisa's claims were barred by the statute of limitations. A hearing on the motions was held on July 31, 2015.

The evidence presented at the summary judgment hearing showed that P & L Finance was incorporated in 1995 and was formed in anticipation of operating as a finance company for a separate business, but the finance company never materialized. The only shareholders were Paul, Elisa's father, and Laurie, Elisa's stepmother, who each owned fifty percent of the corporation. Since P & L Finance's incorporation, Laurie has always been president, treasurer, and a director on the board, and Paul has always been vice president, secretary, and a director on the board.

In November 1999, Laurie began operating a business selling custom jewelry and opened a retail store under P & L Finance's corporate structure, doing business as "Elisa Ilana." Laurie controlled the day-to-day activities of the corporation, as well as the financial matters related to P & L Finance.

Paul has never been involved in the operations of P & L Finance. He does not exercise his officer and director duties and has delegated all responsibilities of the business to Laurie. P & L Finance has never had shareholder or board of directors meetings.

In August 2000, Elisa, who was 19 years old at the time, issued two separate checks totaling $25,000 to P & L Finance. Elisa claims that Laurie came to her and asked her to invest in P & L Finance, and in exchange for her investment she would become a one-third owner of the business. Elisa claims that Laurie accepted her investment and caused the $25,000 to be deposited to P & L Finance's books as equity.

Laurie contends that the $25,000 Elisa gave to P & L Finance was a loan to the corporation. She stated in her affidavit that she asked Elisa if she would loan the corporation funds because the business was growing and it needed capital. P & L's financial records for the years 2001 and 2002 reflect that the $25,000 from Elisa was a loan to P & L Finance. This was verified by the accountant who prepared tax returns for the corporation.

Following Elisa's $25,000 transfer in 2000, no stock certificate was ever issued to her, nor did she receive any documentation indicating ownership. Further, no action was taken by appellees to make Elisa a stockholder. The two accountants who prepared Elisa's personal income tax returns

from 1995 to 2003 and from 2005 to 2013 both stated in affidavits that Elisa's tax returns did not reflect any ownership interest or any distributions from P & L Finance.

When P & L Finance first opened it retail store, Elisa worked there part time when she was in college. Upon graduating from college in 2003, Elisa began working for P & L Finance on a full-time basis as a sales person. During her employment, Elisa assumed the obligations and received the benefits of an employee. In January 2007, Elisa became the manager of a second store location P & L Finance had opened, a bead sales business called "Beads by Elisa Ilana."

In 2008, Laurie transferred P & L Finance's ownership of its beads sales division to Elisa and her son, Adam Langdon. Elisa and Adam subsequently formed "Designer Beads and Charms, Inc." (DBC), each owning a 50-percent interest. After DBC was formed, Elisa worked only at DBS and was no longer employed by P & L Finance. Elisa received a stock certificate reflecting her fifty percent ownership of DBC when it was incorporated.

Appellees claim that in August 2008, P & L Finance repaid the funds it borrowed from Elisa in 2000 when it transferred $22,000 to DBC's checking account in order to help Elisa start the new business. Laurie did not recall the reason why Elisa was repaid $22,000, instead of the $25,000 she loaned to P & L Finance. Elisa denies in her affidavit that the $22,000 transferred to DBC's checking account was to repay her for the $25,000 she gave P & L Finance in 2000.

Elisa claims that she first discovered that appellees did not consider her an owner of P & L Finance in October 2013 when her fiancé, who was an accountant, examined her tax returns and noticed that they did not reflect any ownership interest in P & L Finance. Elisa subsequently asked P & L Finance's lawyer about her alleged ownership interest and was told that he could not provide her any documentation concerning P & L Finance because she was not an owner. Elisa admitted that prior to October 2013, she never inquired about her alleged ownership interest in P & L Finance. Elisa also admitted that she never received any documentation showing her ownership.

Laurie agreed that prior to this case, Elisa never inquired about her alleged ownership interest in P & L Finance. Laurie stated that she and Elisa never talked about the money Elisa gave to P & L Finance and Elisa never asked her about it. Laurie also stated that she never told Elisa she was an owner nor had she ever discussed becoming an owner of P & L Finance with Elisa. Further, Elisa never asked Laurie if she could review financial statements of P & L Finance, never asked what her salary was, and never asked about distributions for shareholders. Laurie stated in her affidavit that she never concealed or failed to disclose any documents or facts to Elisa regarding her alleged ownership of P & L Finance. Laurie also denied ever providing any personal financial or investment advice to Elisa, with the exception of giving her the name of a financial advisor whom Elisa subsequently retained.

Paul stated in his affidavit that Elisa has never asked him to see the stock register or any other corporate records for P & L Finance. Prior to this litigation, he had no knowledge that Elisa claimed to be an owner, and he never told her she was an owner or discussed her becoming an owner. He further stated that he never provided her any financial or investment advice, other than assisting her with buying her first house.

Elisa stated in her affidavit that she had no reason to question her ownership in P & L Finance prior to October 2013. She stated that no one ever told her she was not an owner of P & L Finance and she never saw any documents indicating she was not an owner. She claimed that nothing was ever said to her or made known to her to be inconsistent with her understanding that

she was an owner of P & L Finance. She alleges that this litigation is the first time Laurie and P & L Finance ever asserted that her investment was a loan.

Elisa contends that she relied on Laurie's representation that the money she gave P & L Finance was an investment in the corporation. Elisa stated that Laurie had provided her advice and guidance in personal and financial matters for many years and she relied on and trusted Laurie's guidance in those matters. Laurie was like a mother to Elisa and she had no reason to question the trust, loyalty, or confidence of her relationship with Laurie.

Following the hearing on appellees' motions for summary judgment, the court entered an order finding that Elisa's claim for the issuance of a stock certificate was time barred by the statute of limitations and there were no legal reasons to toll the statute of limitations. It further found that because her claim for the issuance of a stock certificate was time barred, her remaining causes of action must also be dismissed because they were predicated on her alleged status as a shareholder of P & L Finance. The court further found that even if some or all of Elisa's remaining causes of action were not predicated on the allegation of a claimed ownership interest in P & L Finance, those claims were barred by various 4-year statutes of limitations. The court granted appellees' motions for summary judgment.

## ASSIGNMENTS OF ERROR

Elisa assigns that the trial court erred in (1) granting summary judgment in favor of appellees on all of Elisa's claims; (2) finding there was no material issue of fact as to whether appellees engaged in fraud or misrepresentation; (3) finding that because there was no material issue of fact as to fraud and misrepresentation, the statute of limitations for Elisa's claims was not tolled; and (4) failing to find that a confidential relationship existed between her and Laurie, such that it was reasonable for Elisa to not inquire about her ownership status in P & L, and would toll the statute of limitations on Elisa's claims.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Midland Properties v. Wells Fargo,* 296 Neb. 407, 893 N.W.2d 460 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

*Specific Performance for Issuance of Stock Certificate.*

Elisa assigns four errors all of which relate to the court granting summary judgment in favor of appellees on the ground that the statute of limitations had expired. She argues that the statute of limitations was tolled because appellees fraudulently concealed or misrepresented Elisa's ownership status of P & L Finance. Elisa claims that the statute of limitations was tolled until October 2013, when she first discovered that she did not have an ownership interest in P & L Finance.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law *Benard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017). A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Id.* After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* In reviewing a summary judgment, we give the party against whom the judgment was entered all reasonable inferences deducible from the evidence. *Id.*

Elisa's first cause of action seeks specific performance for the issuance of a stock certificate. She alleged that in 2000, she and Laurie made an oral agreement that Elisa would invest $25,000 in P & L Finance and in return, she would get a one-third ownership interest in P & L Finance. There is no dispute that Elisa gave P & L Finance $25,000 in 2000. There is also no dispute that she did not receive a stock certificate or any documentation to indicate that she became an owner.

Appellees' filed their motions for summary judgment asserting that Elisa's claims were barred by the statute of limitations. In regard to Elisa's cause of action seeking issuance of a stock certificate, the trial court found that it was barred by the 4-year statute of limitations for oral contracts, pursuant to Neb. Rev. Stat. § 25-206 (Reissue 2016). This statute provides: "An action upon a contract, not in writing, expressed or implied . . . can only be brought within four years." The point at which a statute of limitations commences to run must be determined from the facts of each case. *Cavanaugh v. City of Omaha*, 254 Neb. 897, 580 N.W.2d 541 (1998). A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit. *Id.* Generally, this is true even though the plaintiff may be ignorant of the existence of the cause of action. *Id.*

A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury occasioned to him or her. *Pennfield Oil Co. v. Winstrom*, 272 Neb. 219, 720 N.W.2d 886 (2006). Elisa alleges that she became a shareholder in P & L Finance in August 2000, when she and Laurie made the alleged oral agreement and Elisa transferred $25,000 to P & L Finance. Thus, Elisa's cause of action accrued and the statute of limitations began to run in August 2000 after Elisa gave P & L Finance $25,000, and did not receive a stock certificate or any documentation reflecting her alleged ownership interest in return. Accordingly, under the 4-year statute of limitations for oral contracts, Elisa needed to file her action by August 2004, regardless of when she allegedly discovered that she was not an owner.

Elisa argues that despite the rule that a cause of action in contract accrues at the time of the breach irrespective of any knowledge, the statute of limitations was tolled because of the fraud committed by appellees, as well as Elisa's confidential relationship with Laurie, which prevented her from discovering that she was not a shareholder. She stated in her affidavit that she had no reason to question her ownership prior to October 2013. She relied on Laurie's representation that

she would become an owner when she contributed $25,000 to P & L Finance because Laurie was like a mother to her and she trusted her. She stated that no one ever told her she was not an owner and she never saw any document indicating she was not an owner. She also claims that access to financial records was limited.

However, as the trial court found, Elisa failed to present sufficient evidence to create a material issue of fact as to whether the appellees concealed information or misled her during the four years after she gave the $25,000 to P & L Finance. P & L Finance financial records reflected the $25,000 as a loan in 2001 and 2002, and Elisa's tax returns did not disclose any ownership interest in P & L Finance. Further, the facts Elisa claims to have discovered in 2013 were the same as those available to her in 2000. Elisa's tax returns from 1995 to 2003, and 2005 to 2015, did not reflect that she was an owner or that she had received any distributions from P & L Finance. Elisa does not dispute that she filed income tax returns every year from 2000 to 2013, that she had the opportunity to review her returns, and that she signed all of her returns.

In addition, Elisa admitted that prior to October 2013 she had never inquired about her alleged ownership interest and never received any documentation showing her ownership. Laurie agreed that Elisa never inquired about her ownership interest. Laurie also stated that after August 2000, she and Elisa never talked about the money Elisa gave P & L Finance. Elisa also never asked Laurie or Paul if she could review financial statements or any corporate records. Laurie stated that she never concealed or failed to disclose any documents or facts to Elisa regarding her alleged ownership of P & L Finance.

We conclude that Elisa failed to produce sufficient evidence to create a genuine issue of material fact of fraud or misrepresentation to toll the four-year statute of limitations. Elisa filed this action on June 9, 2014, almost ten years after the statute of limitations expired. Accordingly, her claim for specific performance for the issuance of a stock certificate is time-barred by the statute of limitations.

*Remaining Causes of Action.*

In addition to her cause of action seeing specific performance for the issuance of a stock certificate, Elisa brought nine other causes of action: conversion, equitable estoppel, fraudulent misrepresentation, aiding and abetting, civil conspiracy, unjust enrichment, constructive trust, director breach of fiduciary duties, and officer breach of fiduciary duties. We agree with the trial court that all of Elisa's claims are predicated on her alleged status as a shareholder. Because her ability to seek the issuance of a stock certificate is barred by the statute of limitations and she cannot prove she is a shareholder, her other claims predicated on her status as a shareholder must also be dismissed.

Even if some or all of Elisa's nine remaining causes of action were not predicated on her claimed ownership in P & L Finance, the claims are barred by various 4-year statutes of limitations. See, Neb. Rev. Stat. § 25-207 (Reissue 2016) (setting forth 4-year statute of limitations for actions for conversion, other torts, and fraud); Neb. Rev. Stat. § 25-211 (Reissue 2016) (setting forth 4-year statute of limitations for accounting and monetary judgment); Neb. Rev. Stat. § 25-212 (Reissue 2016) (setting forth 4-year statute of limitations for actions not specified).

## CONCLUSION

We conclude that the trial court did not err in granting summary judgment in favor of appellees and in dismissing Elisa's action. Accordingly, the order of the district court is affirmed.

AFFIRMED.